**The HERNANDO BANK and Gateway Capitol Corp., Plaintiffs-Appellees,**

v.

**Sharon Smith HUFF, William B. Kountz, Jr., Robert A. Kountz, Diane Smith McDowell, and Mrs. Willie W. Kountz, Defendants-Appellants.**

No. 85–4368.

United States Court of Appeals, Fifth Circuit.

Aug. 13, 1986.

John W. Dulaney, Jr., Dulaney & Dulaney, Tunica, Miss., for defendants-appellants.

William W. Ballard, Hernando, Miss., for Gateway Capitol Corp.

Charles M. Merkel, Merkel & Cocke, John H. Cocke, Clarksdale, Miss., for Hernando Bank.

Before JOHN R. BROWN, REAVLEY, and ROBERT M. HILL, Circuit Judges.

## OPINION

REAVLEY, Circuit Judge:

In this diversity action, five stockholders appeal the district court's finding that the "fair value" of their shares of plaintiff Hernando Bank ("Bank") was $100 per share. *Hernando Bank v. Huff*, 609 F.Supp. 1124 (N.D.Miss.1985). We affirm.

### FACTS

On September 9, 1982, Bank stockholders voted to enter into a merger whereby Bank would become a subsidiary of plaintiff Gateway Capitol Corporation. Both Bank and Gateway are Mississippi corporations. Under the merger agreement, Bank stockholders were to exchange their stock for shares of Gateway. Dissatisfied with the merger, five Bank stockholders—who to-

gether owned 1292 of Bank's 40,000 shares outstanding—exercised their statutory dissenters' rights and demanded to be paid the "fair value" of their shares. Miss. Code Ann. § 79–3–161 (1972).

After the stockholders rejected an offer of $80.56 per share, Bank and Gateway brought this suit in a Mississippi chancery court to have fair value determined. The defendants-stockholders removed the action to federal district court. After a five-day bench trial, the court found fair value to be $100 per share. The court awarded the defendants interest (10.5%), and, because it found that $100 per share "materially exceeds" the plaintiffs' offer, the court awarded the defendants $5000 as reasonable expenses and fees of their expert witnesses. On appeal, the defendants challenge all three amounts—$100 per share, 10.5%, $5000—as being too low.

## FAIR VALUE

The trial court computed fair value by making reference to Bank's market and investment values. The defendants argue that the court resorted to the wrong methodology when it computed each of these values.

### Investment value

■ This formulation places value on a firm's capacity to generate increasingly higher earnings and its prospects of doing so. The trial court computed Bank's investment value to be $102 per share, taking an earnings figure of $340,000 and "capitalizing"—or multiplying—it by a factor of 12, then dividing by Bank's 40,000 shares outstanding. The court expressly adopted the multiplier suggested by the defendants; therefore, their arguments go only to the court's earnings figure. The court looked mostly to Bank's historical earnings, its computation beginning with 1977 and ending with estimated earnings for the full year 1982. The defendants maintain that the court should have looked only to 1982, and they estimated earnings for the full year—by employing trend-line analysis—to be $510,000.

We recognize that reliance on historical earnings has met with disfavor in some quarters. *See, e.g.,* Fischel, *The Appraisal Remedy in Corporate Law,* 1983 Am. B. Found. Research J. 875, 891 ("Since only future earnings are relevant for calculating present value, ... the focus on past earnings is highly arbitrary."). The use of trends, however, has been equally criticized. *See, e.g.,* Note, *Valuation of Dissenters' Stock under Appraisal Statutes,* 79 Harv.L.Rev. 1453, 1465 (1966) ("a five year 'trend' may be no more than a coincidental pattern; it may reflect weaknesses in the earlier years rather than current growth, or may be due to influences that are only temporary"). In any event, it is fairly debatable whether the evidence here clearly established an identifiable upward trend in earnings. Net income for the first half of 1982 was down 37.4% from the comparable period the year before, and Bank's actual reported earnings for the full year—adjusted for non-recurring income items—was down 22.1% from the previous year's earnings.

The preferred method of courts and commentators alike is to use historical earnings and factor any discernible trend into the selection of the multiplier. *See, e.g., Universal City Studios, Inc. v. Francis I. duPont & Co.,* 334 A.2d 216, 218 (Del.1975); Comment, *Valuation of Shares in a Closely Held Corporation,* 47 Miss. L.J. 715, 727 (1976); Note, *supra* at 1467. In this case, the trial court chose a very generous multiplier, ranking Bank with several highly profitable institutions of comparable size located in similarly fast-growing areas. Although there are alternative methods of calculation, we cannot say that the trial court erred in formulating Bank's investment value as it did.

■ The defendants also argue that the trial court's $340,000 figure is unsupported by the evidence, pointing to the fact that the plaintiffs themselves figured average earnings to be $397,000. This argument has no merit. First, the $397,000 figure incorporated Bank's actual reported earnings for the full year 1982 ($533,000). This

information, however, could not have possibly been known on September 8, 1982, the relevant date for computing the fair value of the defendants' shares; therefore, it would not have been permissible for the court to consider such information when it made its determination. Second, our own calculation shows Bank's average earnings, from 1977 through mid–1982, to be just under $341,000. The trial court's finding is not clearly erroneous.

*Market value*

■ The defendants' arguments here are two-fold. First, they maintain that the court erred by including in its fair value determination Bank's supposed market price ($95 per share), which, they contend, is fundamentally unreliable because it was generated by a thinly-traded, insider-controlled market. Although some commentators do not perceive a liquid market as being necessary, *e.g.*, Fischel, *supra* at 890 ("[i]solated trades, if at arm's length, are an unbiased indicator of value"), it seems clear that undue reliance upon transactions made by and between officers and directors would be misplaced. However, despite the trial court's seeming reliance upon Bank's "market" price, we conclude that no harm was caused to the defendants: the court figured Bank's fair value to be only $2 per share less than its investment value.

■ The defendants' second argument is that the trial court should have "reconstructed" a market value for Bank. This was to be accomplished by multiplying Bank's book value—which their expert fixed at $86.06 per share on September 9, 1982—by the "price-to-book" ratio of a "comparable" bank. The minimum acceptable ratio, the defendants maintain, is 1.6, thereby yielding $137.70 per share. Although a reconstructed market value may be useful, *compare Application of Delaware Racing Association*, 42 Del.Ch. 406, 213 A.2d 203 (1965) (reconstructed market value comprised 40% of court's fair value determination), *with* Note, *supra* at 1463 (reconstructed market value used to test reasonableness of valuations arrived at by

other means); Comment, *supra* at 733 (same); *cf. Universal City Studios*, 334 A.2d at 222 (trial court unable to reconstruct market value), it seems clear that the comparison the defendants suggest is invalid. The evidence indicates that the banks they deemed comparable were not going concerns whose stock traded freely in a representative market. *See* Nathan & Shapiro, *Legal Standard of Fairness of Merger Terms under Delaware Law*, 2 Del.J.Corp. Law 44, 50 (1977). Instead, the banks were ones which had themselves been involved in mergers and acquisitions and whose "market" prices were actually the prices at which they had been merged or acquired. The district court was clearly justified in declining to accept the defendants' reconstruction of Bank's market price.

## OTHER CLAIMS

The defendants' only contention with respect to the $5000 award for the expenses and fees of their expert witnesses is that the award be increased should we decide that fair value is much higher than $100 per share. Since we affirm the trial court's finding as to fair value, we leave its award as to expenses and fees undisturbed.

■ As to interest, the statute requires the rate to be "fair and equitable in all the circumstances." Moreover, the rate is determined with a view towards compensating the dissenting stockholders for their inability to use the money owed them for their shares during the time fair value is calculated. *See Universal City Studios*, 334 A.2d at 222–23; Note, *supra* at 1472. The evidence presented at trial was that the yields of certain investments—U.S. Treasury securities and bank certificates of deposit—approximated the rate chosen by the court; therefore, the court's findings as to a "fair and equitable" rate is not clearly erroneous.

AFFIRMED.